# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

S.S., a minor child, by and through YVETTE
STREET,

    Plaintiff,

      v.

DISTRICT OF COLUMBIA,

    Defendant.

Civil Action No. 13-557 (CKK)

## MEMORANDUM OPINION
(September 19, 2014)

Plaintiff Yvette Street filed suit as the parent and next friend of her son, S.S., seeking injunctive and declaratory relief against the District of Columbia under the Individuals with Disabilities Education Improvement Act ("IDEA"),[1] 20 U.S.C. § 1400 *et seq.* Plaintiff is appealing the Hearing Officer Determination that denied in part and granted in part Plaintiff's administrative due process complaint alleging that the District of Columbia Public Schools ("DCPS") denied S.S. a free, appropriate, public education ("FAPE") during the 2011-2012 and 2012-2013 school years. Plaintiff also asserts violations of Section 504 of the Rehabilitation Act of 1973. Presently before the Court are the parties' cross-motions for summary judgment as well as Plaintiff's motion to supplement the Administrative Record. Upon consideration of the

---

[1] The IDEA was re-authorized and re-codified pursuant to the Individuals with Disabilities Education Improvement Act in 2004, Pub. L. No. 108–446, 118 Stat. 2647 (2004). The short title of the re-authorized and amended provisions remains the Individuals with Disabilities Education Act. *See* Pub. L. No 108–446, § 101; 118 Stat. at 2647; 20 U.S.C. § 1400 (2006). Accordingly, the Court refers to the amended Act herein as the IDEA.

parties' briefs,[2] the Administrative Record, and the applicable authorities, the Court DENIES Plaintiff's Motion to Supplement the Administrative Record. As for the parties' cross-motions for summary judgment, the Court finds the Hearing Officer Determination was correct. The Court further finds that Plaintiff has failed to exhaust her Section 504 retaliation claim and failed on the merits to meet her burden of proof on the remaining Section 504 claims. Accordingly, Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Cross–Motion for Summary Judgment is GRANTED.

# I. BACKGROUND

## A. *Factual Background*

Plaintiff does not dispute that the Hearing Officer set out as part of her Determination all of the relevant evidence from the record presented to her. Plaintiff disputes some of the credibility findings and some of the conclusions reached by the Hearing Officer based on the factual record. Accordingly, the Court will cite to evidence, findings, and conclusions as they relate to the discussions of the issues raised in this case.

## B. *Procedural Background*

### a. *Administrative Due Process Complaint and IDEA Hearing Officer Determination*

---

[2] Plaintiff's Amended Motion for Summary Judgment ("Pl.'s Mot."), ECF No. [46]; Defendant's Cross-Motion for Summary Judgment ("Def.'s Cross-Mot."), ECF No. [47]; Defendant's Opposition to Plaintiff's Amended Motion for Summary judgment ("Def.'s Opp'n."), ECF No. [48]; Plaintiff's Opposition to Defendant's Cross-Motion for Summary Judgment and Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment ("Pl.'s Opp'n."), ECF Nos. [49], [54]; Defendant's Reply to Plaintiff's Opposition to Defendant's Cross-Motion for Summary Judgment (Def.'s Reply), ECF No. [59]; Plaintiff's Motion for Leave to Submit Additional Evidence ("Pl.'s Mot. for Addt'l Ev."), ECF No. [34]; Defendant's Opposition to Plaintiff's Motion for Leave to File Additional Evidence (Def.'s Opp'n. to Mot. for Addt'l Ev."), ECF No. [40]; Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Leave to File Additional Evidence ("Pl.'s Reply to Mot. for Addt'l Ev."), ECF No. [43].

On December 21, 2012, Plaintiff filed an administrative due process complaint against the District. AR at 387-399. Plaintiff identified the following issues in her administrative complaint: (1) failure to provide S.S. a FAPE due to disability harassment and bullying by students and staff; (2) failure to adequately evaluate S.S. in all areas of suspected disability; (3) failure to provide S.S. special education and related services regarding discipline and corporal punishment; (4) failure to provide S.S. an assistive technology device and assistive technology services; (5) failure to provide S.S. an appropriate placement at McFarland; and (6) failure to provide S.S. home instruction during the 2012-2013 school year. *Id.* at 397.

On January 23, 2013, a pre-hearing conference was held and a pre-hearing order was issued. *Id.* at 449. The Hearing Officer identified the following issues for adjudication: (1) "Whether [DCPS] denied [S.S.] a free, appropriate, public education ("FAPE") during the 2011-2012 school year when the classroom aide and other students repeatedly physically harmed him, which prevented him from accessing the curriculum and making progress on the goals in his individualized education program ("IEP");" (2) "Whether [DCPS] denied [S.S.] a FAPE during the 2011-2012 school year by failing to conduct assistive technology and developmental vision assessments of [S.S.];" (3) "Whether [DCPS] denied [S.S.] a FAPE during the 2012-2013 school year by failing to prevent other students from physically harming him, which prevented [S.S.] from accessing the curriculum and resulted in his developing school phobia;" (4) "Whether [DCPS] denied S.S. a FAPE from October 25, 2012, through the present by failing to provide him home-based instruction while he was unable to attend school due to the injuries he suffered after another student injured him in the school cafeteria and due to his school phobia;" (5) "Whether [DCPS] denied [S.S.] a FAPE during the 2011-2012 and 2012-2013 school years by failing to provide him assistive technology, i.e., a laptop computer or iPad and related software

to assist him with communication;" and (6) "Whether [DCPS] denied [S.S.] a FAPE during the 2011-2012 and 2012-2013 school years by failing to provide him a sufficiently restrictive placement, i.e., place him in a separate, special education day school for students with severe autism." *Id.* at 451-452. Plaintiff did not object to the issues the Hearing Officer determined for adjudication in the pre-hearing order, either within the three-day window to object following the issuance of the pre-hearing order or when the Hearing Officer read the issues certified for hearing at the beginning of the due process hearing. *Id.* at 38 n. 380.

The due process hearing was held on February 27, 28, and March 4, 2013. *Id.* at 887; 1160; 1409. During the hearing, Plaintiff withdrew her claim that DCPS denied S.S. a FAPE during the 2011-2012 and 2012-2013 school years by failing to provide him assistive technology (Issue #5) and her claim that DCPS denied S.S. a FAPE during the 2011-2012 school year by failing to conduct an assistive technology assessment of S.S. (Issue #2). *Id.* at 898-900. Plaintiff also withdrew her proposed compensatory education plan as a remedy for failing to provide home instruction (Issue #4) and confirmed that it should be withdrawn with prejudice. *Id.* at 1450-51.

Plaintiff; Dr. Alsan Bellard, S.S.'s pediatrician; Janeen Curry, a bus attendant on the bus S.S. took to school; Nicole Zeitlin, an expert in clinical psychology; and Kristin Conaboy, an occupational therapist who evaluated S.S., testified for Plaintiff. DCPS Autism Coordinator Emily Pearson testified on behalf of DCPS. The Hearing Officer issued a Determination on March 16, 2013. *Id.* at 3-39. The Hearing Officer concluded that Plaintiff proved that DCPS denied S.S. a FAPE during the 2011-2012 school year by failing to conduct a developmental vision assessment and ordered related relief. *Id.* at 33-34. The Hearing Officer also concluded that Plaintiff proved that DCPS denied S.S. a FAPE from October 25, 2012, through the present

by failing to provide home-based instruction. *Id.* at 34-35. However, the Hearing Officer did not provide a remedy for this denial of a FAPE because during the hearing, Plaintiff withdrew her claims for compensatory education with prejudice, which the Hearing Officer determined was the proper remedy. AR at 35; 1450-51.

The Hearing Officer ruled against Plaintiff on the remaining issues. Specifically, the Hearing Officer concluded that Plaintiff failed to prove that DCPS denied S.S. a FAPE during the 2011-2012 and 2012-2013 school years by failing to stop other students and the Classroom Aide from bullying S.S., which prevented him from accessing the curriculum, resulting in S.S. developing school phobia. *Id.* at 29-32. The Hearing Officer also concluded that Plaintiff failed to prove that DCPS denied S.S. a FAPE during the 2011-2012 and 2012-2013 school years by failing to provide him a sufficiently restrictive placement, that is, a separate special education day school for students with autism. *Id.* at 35-38.

    b. *District Court Complaint*

Plaintiff filed suit on April 24, 2013, asserting that DCPS denied S.S. a free appropriate public education. Plaintiff filed an Amended Complaint on August 26, 2013, appealing the March 16, 2013, Hearing Officer Determination and alleging violations of Section 504 of the Rehabilitation Act. *See* ECF No. [23]. Specifically, Plaintiff alleges that Defendant violated the IDEA by failing to provide S.S. a FAPE due to disability harassment (Count I), failing to implement the IEP (Count II), failing to protect S.S. from bullying (Count III), and by failing to provide home instruction (Count IV). Plaintiff further alleges that Defendant violated Section 504 by denying S.S. a FAPE due to disability harassment and the creation of a hostile environment (Count V), through other acts (Count VI), and by retaliating against Plaintiff for legally protected activities (Count VII). Finally, Plaintiff alleges that the Hearing Officer failed

to render a fair and proper decision (Count VIII).

On January 20, 2014, Plaintiff filed her Amended Motion for Summary Judgment.[3]  On January 30, 2014, Defendant filed a Cross-Motion for Summary Judgment arguing that (1) Plaintiff failed to exhaust her administrative remedies as to her Section 504 retaliation claim; (2) Plaintiff was raising the failure to implement the IEP before this Court in the first instance, without first presenting the issue to a hearing officer; (3) Plaintiff failed to show that S.S. was bullied by other students or by the Classroom Aide; and (4) Plaintiff failed to present an argument to sustain her Section 504 claims.  Alternatively, Defendant argues that DCPS did not violate any provisions of Section 504.  In addition, with respect to Count VIII of Plaintiff's Amended Complaint, Defendant argues that the Court should deny Plaintiff's Motion because the Hearing Officer Determination is legally sufficient and entitled to due deference.  The parties subsequently filed oppositions and replies to their respective motions for summary judgment. Accordingly, the parties' motions are now ripe for review by the Court.

Plaintiff also filed a Motion for Leave to File Additional Evidence.  Plaintiff seeks to supplement the Administrative Record with four pieces of evidence: (1) evidence that DCPS' witness at the due process hearing lied under oath about her credentials; (2) newly discovered evidence that DCPS failed to provide S.S. adapted physical education as required in S.S.'s 2011-2012 IEP; (3) after-occurring evidence related to DCPS' alleged retaliation against Plaintiff; and (4) S.S.'s developmental optometry evaluation and evidence of DCPS' alleged non-response to

---

[3] Plaintiff originally filed her motion for summary judgment on November 25, 2013, *see* ECF No. [35], however, the Court struck the motion because Plaintiff's statement of material facts did not comply with Local Civil Rule 7(h)(2).  In a Minute Order entered on January 6, 2014, the Court ordered Plaintiff to resubmit her motion for summary judgment with a statement of material facts that complied with LCvR 7(h)(2) by no later than January 20, 2014, which Plaintiff did.

the evaluation. Defendant filed an opposition to Plaintiff's Motion for Leave to File Additional Evidence and Plaintiff filed a reply. Accordingly, Plaintiff's Motion is also ripe for the Court's review.

## II.    LEGAL STANDARD

### A.  Summary Judgment Under Federal Rule of Civil Procedure 56

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and [that he] ... is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id.* Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of his position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *Ass'n of Flight Attendants–CWA, AFL–CIO v. U.S. Dep't of Transp.,* 564 F.3d 462, 465–66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the

fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in his favor. *Liberty Lobby,* 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman,* 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to [the trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby,* 477 U.S. at 251–52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249–50 (citations omitted).

### B. *Review of an Administrative Decision Under the IDEA*

Under the IDEA, a "party aggrieved by the findings and decision" of the hearing officer may bring a civil action in federal court "without regard to the amount in controversy." 20 U.S.C. § 1415(i)(2)(A). The court "shall receive the records of the administrative proceedings," "shall hear additional evidence at the request of a party," and, "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." § 1415(i)(2)(C). In a civil action reviewing an IDEA administrative determination, "[a] motion for summary judgment operates as a motion for judgment based on the evidence comprising the

record and any additional evidence the Court may receive." *D.R. v. District of Columbia,* 637 F.Supp.2d 11, 16 (D.D.C. 2009).

The reasons for a court to hear additional evidence at the request of a party "might include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing." *Town of Burlington v. Dep't of Ed.,* 736 F.2d 773, 790 (1st Cir. 1984). The trial court has the discretion to determine what constitutes "additional" evidence under the IDEA and "must be careful not to allow such evidence to change the character of the hearing from one of review to a trial *de novo.*" *Id.* at 791; *see also Springer v. Fairfax Cnty. Sch. Bd.,* 134 F.3d 659, 667 (4th Cir. 1998) ("A lax interpretation of 'additional evidence' would 'reduce the proceedings before the state agency to a mere dress rehearsal by allowing appellants to transform the Act's judicial review mechanism into an unrestricted trial *de novo*' " (internal citation omitted)). Furthermore, additional evidence should not be introduced in the trial court "to patch up holes in [a party's] administrative case," *Springer,* 134 F.3d at 667, since that would result in administrative proceedings "no longer receiv[ing] the weight that they are due," *Schaffer v. Weast,* 554 F.3d 470, 476 (4th Cir. 2009). Finally, additional evidence should be relevant to the challenged decisions of the hearing officer. *S.M. v. Bd. of Ed. of Albuquerque Pub. Sch.*, 565 F.3d 1232, 1241 (10th Cir. 2009).

The party challenging the Hearing Officer Determination bears the burden of proof and must "at least take on the burden of persuading the court that the hearing officer was wrong." *Reid v. District of Columbia,* 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting *Kerkam v. McKenzie,* 862 F.2d 884, 887 (D.C. Cir. 1989)). The preponderance-of-the-evidence standard in

this context does not grant the reviewing court unfettered *de novo* review. *See Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley,* 458 U.S. 176, 206 (1982) ("Thus the provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review."). Rather, courts must give "due weight" to the administrative proceedings. *Id.* "[F]actual findings from the administrative proceeding are to be considered prima facie correct." *Roark v. District of Columbia,* 460 F.Supp.2d 32, 38 (D.D.C. 2006) (quoting *S.H. v. State–Operated Sch. Dist. of the City of Newark,* 336 F.3d 260, 270 (3d Cir. 2003)). Because the IDEA permits a reviewing court to entertain additional evidence at the request of a party, courts employ " 'less deference than is conventional' in administrative proceedings." *Reid,* 401 F.3d at 521 (quoting *Kerkam,* 862 F.2d at 887). Nevertheless, the Court should "defer to the [hearing officer's] factual findings unless it can point to contrary nontestimonial extrinsic evidence on the record." *S.H.,* 336 F.3d at 270; *accord Alfono v. District of Columbia,* 422 F.Supp.2d 1, 8 (D.D.C. 2006); *Armstrong v. District of Columbia,* No. 03–2598, 2005 WL 433448, at *2 (D.D.C. Feb. 24, 2005).

## III.   DISCUSSION

### A.  Motion to Supplement Administrative Record

Plaintiff moves the Court to permit her to supplement the Administrative Record with four categories of evidence: (1) evidence that a DCPS witness at the due process hearing lied under oath about her credentials and that DCPS' attorney allegedly knew about it and suborned perjury; (2) Plaintiff's affidavit averring that a DCPS teacher admitted to Plaintiff that DCPS failed to place S.S. in an adapted physical education class during the 2011-2012 school year in violation of S.S.'s IEP; (3) evidence that DCPS retaliated against Plaintiff for her protected

activities advocating for S.S.'s educational needs; and (4) the developmental optometry evaluation ordered by the Hearing Officer and the documents relevant to the June 11, 2013, IEP meeting at which DCPS allegedly refused to change S.S.'s IEP in response to the evaluation. The Court will consider the propriety of admitting each category of evidence in turn.

### a. Evidence of False Testimony During the Due Process Hearing

Plaintiff first moves the Court to supplement the Administrative Record with evidence that Defendant's only witness, Emily Pearson, DCPS' Autism Coordinator, lied under oath about her credentials during the due process hearing, as well as evidence that Plaintiff contends shows that DCPS suborned perjury. Defendant concedes that Ms. Pearson misrepresented her credentials during the due process hearing, but argues that this evidence should not be added to the Administrative Record because Ms. Pearson's testimony "had no bearing on the outcome of the hearing." Def.'s Opp'n. to Mot. for Addt'l Ev. at 4. Defendant also argues that none of Plaintiff's accusations that the District suborned perjury have any basis in fact. *Id.* at 10.

The Hearing Officer recited Ms. Pearson's testimony as it related to the merits of Applied Behavior Analysis ("ABA") therapy for autistic children and to the fact that MacFarland does not employ ABA therapists. AR at 15-16, ¶¶ 33, 35. The Court agrees with Defendant that the Hearing Officer did not rely on Ms. Pearson's testimony in its findings and conclusions of law. The Hearing Officer relied on regulations in describing the role of ABA therapy in an IEP and reached the legal conclusion that, since Plaintiff did not challenge the IEP by requesting that ABA therapy be included, Plaintiff cannot argue that ABA therapy should have been provided, necessitating S.S.'s placement in the special education day school that could provide that therapy. *See id.* at 38. Accordingly, Ms. Pearson's testimony was irrelevant to the claim of bullying and the claim that a change of school placement was required. In addition, there is no

evidence to support a conclusion that the DCPS attorney suborned perjury other than Plaintiff's pure speculation.

The Court also finds that this evidence is not relevant to Plaintiff's allegation that DCPS denied S.S. home instruction and an optometry evaluation in bad faith or gross misjudgment—the only denials of a FAPE that the Court finds actionable under Section 504 for the reasons described in Part B(d)(iii). Ms. Pearson testified extensively about ABA therapy and the therapies available at MacFarland, not about the need for DCPS to provide home instruction or an optometry evaluation. Accordingly, the Court will not supplement the record with this evidence other than to acknowledge that Ms. Pearson lied about her credentials. The fact that the Court is not admitting this evidence because it is not relevant to the issues before the Court does not mean that the Court is in any way condoning the fact that Ms. Pearson lied about her credentials during the due process hearing.

**b. Evidence of Admission Regarding Physical Education Class**

Plaintiff next seeks to supplement the Administrative Record with her own affidavit averring that a DCPS teacher admitted that DCPS failed to place S.S. in adapted physical education during the 2011-2012 school year in violation of S.S.'s IEP. Plaintiff offers this evidence as evidence of DCPS' bad faith and gross misjudgment in support of her Section 504 Rehabilitation Act claims. The Court will not permit Plaintiff to supplement the Administrative Record with this evidence because it is not related to the issues that were presented to the Hearing Officer that Plaintiff is now challenging. Plaintiff did not challenge S.S.'s IEP or the failure to implement the IEP. The Court further fails to see how this alleged admission about one violation of S.S.'s IEP constitutes, without more, evidence of DCPS' bad faith or gross misjudgment as to the unrelated denial of home instruction and an optometry evaluation—the

12

only denials of a FAPE that the Court finds actionable under Section 504 for the reasons described in Part B(d)(iii).  Accordingly, the Court denies Plaintiff's request to supplement the Administrative Record with this evidence.

### c.  Evidence of Retaliation

Plaintiff also seeks to supplement the Administrative Record with evidence that Defendant retaliated against Plaintiff for her efforts to advocate for educational services for S.S. by reporting Plaintiff to the Child and Family Services Agency ("CFSA") and to the Superior Court for criminal truancy. The Court will not permit Plaintiff to supplement the Administrative Record with this evidence because, as discussed in Part B(d)(i), Plaintiff's retaliation allegations have not been exhausted through the IDEA administrative process and thus are not properly before this Court.  As Plaintiff's retaliation claim was not exhausted before the Hearing Officer in the administrative due process hearing, by definition, evidence of DCPS' allegedly retaliatory activities cannot be relevant to the challenged decisions of the Hearing Officer.

### d.  Evidence of Developmental Optometry Evaluation and DCPS' Response to Evaluation

Finally, Plaintiff seeks to supplement the Administrative Record with the developmental optometry evaluation ordered by the Hearing Officer as well as documents relevant to the June 11, 2013, IEP meeting at which DCPS allegedly refused to change S.S.'s IEP in response to the optometry evaluation.  Plaintiff seeks "to admit this evidence to further elucidate the Court on Defendant's past and continuing denials of FAPE, as well as their discrimination against S.S. solely on the basis of disability by refusing to provide him aids, benefits, and services that are as effective as those for non-disabled students."  Pl.'s Mot. for Addt'l Ev. at 19.  Plaintiff also presents this evidence as evidence of Defendant's bad faith or gross misjudgment.  The Court

will not permit Plaintiff to supplement the Administrative Record with this evidence because it is not relevant to the Hearing Officer's determinations that Plaintiff is now challenging. First, this evidence should not be admitted to elucidate Defendant's *past* denial of a FAPE because the Hearing Officer found in Plaintiff's favor on the issue of the optometry evaluation and thus Plaintiff is not challenging that decision before this Court. Nor should this evidence be admitted to elucidate Defendant's *continuing* denial of a FAPE. Plaintiff argues that this evidence shows DCPS continued to deny S.S. a FAPE after conducting the optometry evaluation by not adjusting S.S.'s IEP based on the results of the evaluation. To the extent this evidence shows a new denial of a FAPE occurring after the due process hearing, it is not properly before the Court because it was not among the issues exhausted in the administrative due process hearing presently being challenged.

Plaintiff is correct that evidence of events occurring after the due process hearing can be added to the Administrative Record when it bears on the suitability of an earlier IEP that was challenged during the due process hearing. *See Shaffer v. Weast*, 554 F.3d 470, 478 (4th Cir. 2009) ("We have held that where an IEP is accepted, evidence of educational progress under that IEP is useful in deciding whether the IEP was appropriate."). However, Plaintiff did not challenge S.S.'s IEP before the Hearing Officer. As the evidence Plaintiff seeks to introduce only goes to the adequacy of S.S.'s IEP which was not an issue before the Hearing Officer and is not an issue now before this Court, the Court shall deny Plaintiff's request to supplement the Administrative Record with this evidence. Plaintiff also cannot present this evidence as evidence of DCPS' bad faith or gross misjudgment to support her Section 504 claims because it does not show bad faith in DCPS' denial of home instruction or an optometry evaluation, especially as

Plaintiff has not indicated that the results of the optometry evaluation necessitated a change in S.S.'s IEP.

**B. Cross-Motions for Summary Judgment**

**a. Failure to Provide a FAPE due to Disability Harassment and Bullying (Counts I and III)**

In her administrative due process complaint and before the Hearing Officer, Plaintiff alleged that S.S. was subjected to disability harassment and bullying while at MacFarland Middle School and that this bullying led S.S. to develop a psychological condition called "school avoidance" which in turn led him to miss school and be denied a FAPE. AR at 396, ¶ 64. Plaintiff argues that the Hearing Officer erred in holding that Plaintiff failed to prove a denial of a FAPE due to disability harassment and bullying because the Hearing Officer Determination was not "regularly made" and because the Hearing Officer improperly discredited testimony that S.S. was bullied and that this bullying led S.S. to develop school avoidance. Pl.'s Mot. at 10. The Court shall address each argument in turn.

**i. Certification of Issues**

Plaintiff argues that the Hearing Officer's failure to find for Plaintiff on Plaintiff's claim of disability harassment and bullying was in error because the Hearing Officer's findings were not "regularly made." Pl.'s Mot. at 39. Specifically, Plaintiff notes that in a pre-hearing order, the Hearing Officer certified for hearing the issue of whether Defendant denied S.S. a FAPE during the 2011-2012 and 2012-2013 school years when the Classroom Aide and other students "*repeatedly physically harmed* him." *See* AR at 451. The Hearing Officer confirmed the certification of the issue of "repeated physical harm" at the beginning of the due process hearing. *Id.* at 894. However, in the Hearing Officer Determination, the Hearing Officer stated the issue

as whether the Classroom Aide and other students "*bull[ied]* [S.S.]."  *Id.* at 7.  Plaintiff contends that by ultimately evaluating whether S.S. was "bullied," instead of simply "physically harmed," the Hearing Officer effectively required Plaintiff to prove intent, which Plaintiff did not know during the hearing she was expected to prove.  Pl.'s Mot. at 25.

The Court finds that the Hearing Officer's focus on bullying in her Determination, instead of repeated physical harm, did not deny Plaintiff a fair and proper hearing or decision. First, in her administrative due process complaint, Plaintiff herself framed the issue as whether S.S. was denied a FAPE "due to disability *harassment* and *bullying*."  AR at 397.  To support her allegation of disability harassment and bullying in the administrative complaint, Plaintiff presented facts about a series of physical injuries that S.S. received while at MacFarland.  These were the same facts about which Plaintiff extensively testified during the due process hearing. Moreover, Plaintiff acknowledges in her Opposition that her expert witnesses testified about the *bullying* to which S.S. was subjected at MacFarland.  Pl.'s Mot. at 13.  In her Determination, the Hearing Officer clearly considered all of the physical injuries Plaintiff alleged in her administrative complaint and again at the hearing as evidence of bullying.  Although Plaintiff appears to be arguing that she was prejudiced by the shift in focus from physical harm to bullying, Plaintiff herself contends in her Motion that the preponderance of the evidence nevertheless showed S.S. was bullied in school.  *Id*. at 23.  Accordingly, the Court is not inclined to find that Plaintiff was prejudiced in her presentation of evidence at the due process hearing.

In any event, the focus of the Hearing Officer Determination was ultimately less on whether there was bullying and more on whether that bullying or physical harm caused the denial of a FAPE.  Thus, even if, as Plaintiff argues, the Hearing Officer was wrong to have considered whether certain instances of physical harm were accidental, the Hearing Officer's

Determination was ultimately based on her finding that Plaintiff had failed to present sufficient evidence that the physical harms S.S. suffered—accidental or not—were the cause of his school avoidance and his lengthy absences from MacFarland. *See* AR at 32. Accordingly, the Court rejects Plaintiff's argument that the Hearing Officer's conclusion that Plaintiff failed to show that S.S. was denied a FAPE due to bullying was procedurally irregular.

### ii. Evidence of disability harassment/bullying

The Court also rejects Plaintiff's argument that the Hearing Officer erred in finding that Plaintiff failed to prove S.S. was denied a FAPE due to disability harassment and bullying. This jurisdiction has not addressed the issue of whether bullying may be a basis for finding a violation of the IDEA and a denial of a FAPE. Four other circuits have addressed this issue,[4] however, a common framework under which to analyze the issue has not emerged. *T.K. v. New York City Dep't of Ed.*, 779 F.Supp.2d 289, 312 (E.D.N.Y. 2011). Of the circuits that have developed a test for analyzing bullying claims, the Ninth Circuit asks "whether a teacher was deliberately indifferent to bullying and the abuse so severe that a child can derive *no* educational benefit." *Id.* at 313 (citing *M.L. v. Fed. Way. Sch. Dist.,* 394 F.3d 634, 650 (9th Cir. 2005)) (emphasis in original). The United States District Court for the Eastern District of New York has derived another test: "whether school personnel was deliberately indifferent to, or failed to take reasonable steps to prevent bullying that substantially restricted a child with learning disabilities in her educational opportunities." *T.K.*, 779 F.Supp.2d at 316.

During the due process hearing, Plaintiff testified about physical injuries that S.S.

---

[4] *Smith v. Guilford Bd. of Ed.*, 226 Fed.Appx. 58 (2d Cir. 2007); *M.L. v. Fed. Way. Sch. Dist.,* 394 F.3d 634 (9th Cir. 2005); *Shore Regional High Sch. Bd. of Ed. v. P.S.*, 381 F.3d 194 (3d Cir. 2004); *Charlie F. ex rel. Neil F. v. Bd. of Ed. of Skokie Sch. Dist. 68*, 98 F.3d 989 (7th Cir. 1996).

received while at MacFarland Middle School. Plaintiff also presented two experts who testified about S.S.'s autism spectrum disorder and the "school avoidance" anxiety disorder S.S. allegedly developed while at MacFarland. In her Determination, the Hearing Officer considered in detail all of the incidents of physical harm about which Plaintiff and her experts testified. Plaintiff does not now contend that the Hearing Officer failed to consider certain evidence. Instead, Plaintiff primarily takes issue with the Hearing Officer's credibility determinations, specifically as they affect the Hearing Officer's conclusions about whether the physical harms S.S. suffered were the result of bullying and whether they caused S.S. to develop school avoidance and miss school.

In her Determination, the Hearing Officer found that between August 25, 2011, and the end of September 2012, S.S. often returned home with scratches and bruises and was involved in about ten incidents at school in which he sustained injuries, including a bruised wrist, a sprain in his arm and neck, and head injuries. AR at 19, ¶ 48; 30; 32. While the Hearing Officer found that Plaintiff and her experts testified credibly about these injuries, the Hearing Officer ultimately concluded that Plaintiff had failed to prove "the scratches weren't a result of his tantrums, clumsiness, or horseplay," or that the injuries were not accidental or caused by S.S.'s own aggressiveness. *Id.* at 32.

The Hearing Officer next found that by October 19, 2011, S.S. had missed fifteen days of school and had "become reluctant to attend school because he feared the Classroom Aide." *Id.* at 30. Again, although the Hearing Officer credited Plaintiff's testimony that the child feared the Classroom Aide, the Hearing Officer did not credit Plaintiff's testimony that the Classroom Aide had bullied S.S. or in any other way caused physical harm to S.S. *Id.* at 26, ¶ 92; 32. The Hearing Officer noted that the only evidence that the Classroom Aide had physically harmed S.S.

came from Plaintiff's testimony that S.S. had specifically told Plaintiff that the Classroom Aide had injured him and explained the manner in which he was injured. *Id.* at 26, ¶ 92. The Hearing Officer discredited Plaintiff's testimony because the testimony of Plaintiff's experts was that S.S. was "essentially non-verbal [which] undermines [Plaintiff's] assertion that [S.S.] described the incidents to her." *Id.*

The Hearing Officer next found that in December 2011, S.S. was hit in the head several times by weighted basketballs during his physical education class. *Id.* at 30. S.S. was injured in at least three incidents, including one in which he was knocked to the floor. *Id.* "Within weeks," S.S. was hospitalized with Bell's Palsy. *Id.* The Hearing Officer found that these incidents "may have been accidental" given the fact that the testimony established that S.S. "is often unaware of the location of his body in the space around him" and "trips and falls frequently." *Id.* at 32.

Following the winter break, MacFarland gradually transitioned S.S. into another special education classroom taught by a different teacher. *Id.* at 31. Higher functioning children were taught in this classroom and the Classroom Aide was not present in the classroom. *Id.* The day after he returned to school, S.S. got into an altercation with a student in his new classroom, punching the student in the nose. *Id.* Other than his difficulties with his classmate, the Hearing Officer found that S.S." enjoyed the time he spent in his new class," had no difficulties boarding the school bus, attended school regularly, and "did not return home from school with any observable injuries." *Id.*

In March 2012, S.S. was hospitalized because he was experiencing extreme pain in his eyes and ears. *Id.* S.S.'s doctors informed Plaintiff that S.S. would not be able to return to school during the remainder of the school year. *Id.* By June 12, 2012, the last day of the 2011-2012 school year, S.S. had been absent from school for 103 days. *Id.* The Hearing Officer

concluded that Plaintiff failed to show that "S.S. failed to make academic progress during the 2011-2012 school year because he was bullied by other students and the Classroom Aide" and found instead that S.S.'s "failure to make progress was due to his missing 103 school days that year." *Id*. at 32.

As for the 2012-2013 school year, which S.S. again spent at MacFarland, the Hearing Officer found that on September 10, 2012, S.S. arrived at school already upset and crying and complaining of chest pain. *Id*. at 31. That same day, S.S. punched another student in the eye. *Id*. On September 11, 2012, one of S.S.'s classmates became aggressive towards a teacher. *Id*. The classmate then rushed toward S.S. and pushed him in the back and onto the concrete floor causing S.S. to dislocate his finger and lose a tooth. *Id*. S.S. was not the target of the student who pushed him to the floor in the altercation with a teacher. On September 30, 2012, Plaintiff informed the Special Education Coordinator ("SEC") that S.S. "had informed his doctors that he was afraid of getting hurt if he returned to the Middle School." *Id*. Plaintiff also informed the SEC that she did not want S.S. to return to the Middle School. *Id*. S.S. had not returned to school as of the time the Hearing Officer Determination was issued. *Id*. at 24, ¶ 80. The Hearing Officer concluded that Plaintiff "failed to show that [S.S.] developed school avoidance during the 2012-2013 school year because the Classroom Aide and other students had bullied him at the Middle School" and "failed to prove that [S.S.'s] refusal to attend school was not due to his disability, including his unreasonable fears, or his Bell's Palsy." *Id*. at 32.

After a thorough review of the Administrative Record, the Court finds no reason to question the Hearing Officer's determination regarding the effects of the repeated physical harms S.S. suffered on his access to a FAPE. First, the Hearing Officer did not credit Plaintiff's experts' testimony "that the Student has developed either school phobia or school avoidance." *Id*.

at 26-27, ¶¶ 93, 94. The Hearing Officer discredited this testimony because the experts "failed to explain the medical basis for [their] opinion" and "admitted that [they] based [their] opinion[s] on [Plaintiff's] impressions of the Student's behavior." *Id.* at 26-27, ¶¶ 93, 94. The Hearing Officer also discredited the experts' opinions because they "failed to address the sudden disappearance of the Student's school avoidance when [the Student] was placed in the classroom of Teacher II at the Middle School" in the last half of the 2011-2012 school year. *Id.* at 27, ¶¶ 93, 94. Although Plaintiff broadly argues that the Hearing Officer's credibility determinations were "not regularly made and not supported by the preponderance of the evidence," the Court finds no reason in the Administrative Record to question the Hearing Officer's credibility determinations as to the expert testimony because the Hearing Officer provides a reasoned explanation for her findings. Pl.'s Mot. at 10. Most notably, while S.S. clearly suffered a number of physical injuries throughout the first part of the 2011-2012 school year and developed an aversion to school, the experts did not explain why this aversion disappeared when S.S. transferred into another classroom.[5] Plaintiff argues that the Court should have drawn the "logical inference" that S.S.'s fears subsided because the Classroom Aide was not present in the new classroom, however, there was no evidence that the Classroom Aide had bullied or physically injured S.S. other than Plaintiff's own testimony to that effect which the Hearing Officer correctly discredited. Pl.'s Mot. at 10. The Court finds no reason to question the Hearing Officer's credibility determination as to Plaintiff's testimony regarding the Classroom

---

[5] Plaintiff argues that her experts should not be faulted for failing to answer questions that were never asked, apparently referencing the fact that Plaintiff's experts were not asked to explain why S.S. was no longer fearful or reluctant to go to school once he switched classrooms in the winter of 2012. This argument is unavailing because Plaintiff bore the burden of proof at the administrative due process hearing, not the Hearing Officer.

Aide because Plaintiff and the experts testified that S.S. was largely non-verbal,[6] making Plaintiff's testimony that S.S. specifically told her that the Classroom Aide injured him incredible. *See* AR at 1098, 1194. Accordingly, without any evidence as to why S.S.'s alleged school avoidance—a condition significantly more severe than simple emotional distress or fear, *see* AR at 1201—disappeared when he changed classrooms, the Court finds the Hearing Officer did not err in discrediting the expert opinion that S.S. was suffering from school avoidance during the 2011-2012 and 2012-2013 school years.

Second, the Hearing Officer's conclusion that S.S.'s failure to make progress during the 2011-2012 and 2012-2013 school years was due to his frequent absences and not bullying or school avoidance is supported by the Administrative Record. During the 2011-2012 school year, S.S. missed 103 days of school. *Id.* at 307-308; 356. The substantial majority of these absences were due to S.S.'s hospitalization for pain in his eyes and ears from March to June 2012 several months *after* S.S. changed classrooms and stopped being reluctant to attend school. *Id.* at 998-99. In her Motion for Summary Judgment, Plaintiff contends that S.S.'s absences during the 2011-2012 school year were due to his Bell's Palsy which was caused by the weighted ball with which S.S. was accidentally hit in the head in December 2011 and which Plaintiff alleges was an incident of bullying. Pl.'s Mot. at 7, 33. However, there was no evidence in the Administrative Record that S.S.'s Bell's Palsy was caused by the weighted ball hitting his head. The only evidence presented was that the doctors did not know what caused S.S.'s Bell's Palsy. AR at 975-76, 1127. Accordingly, the Court finds that S.S.'s failure to make academic progress in

---

[6] Plaintiff contends that contrary to the Hearing Officer's conclusion, her experts did not testify that S.S. was "essentially nonverbal." Pl.'s Mot. at 13 n. 96. The Court has reviewed the experts' testimony and determined that the experts' testimony was in fact that S.S. was largely nonverbal. *See* AR at 1098, 1194.

2011-2012 was due to his substantial absences for his medical conditions, not due to bullying or any alleged reluctance to attend school.

As for the 2012-2013 school year, S.S. returned to MacFarland Middle School after having finished the second half of the prior school year without any bullying incidents or reluctance to attend school before leaving school for medical reasons. S.S. returned to school upset and wanting to go home and punched a student in the eye. *Id.* at 342. S.S. then experienced one incident in which another student became aggressive toward a teacher and ran in S.S.'s direction pushing him in the back and injuring him. *Id.* at 1019-20. A few weeks thereafter, Plaintiff removed S.S. from school because S.S. "was afraid of getting hurt if he returned to the Middle School." *Id.* at 23; 633-635. Based on this evidence, the Court finds that the Hearing Officer did not err in finding that Plaintiff failed to prove that S.S.'s refusal to attend school was due to bullying and "not due to his disability, including his unreasonable fears, or his Bell's Palsy." *Id.* at 32.

In sum, the Court finds, as did the Hearing Officer, that Plaintiff failed to present sufficient evidence that S.S. was denied a FAPE due to bullying or disability harassment. Accordingly, the Court enters summary judgment in Defendant's favor as to Counts I and III of Plaintiff's Amended Complaint.

### b. Failure to Implement IEP/Inappropriate Educational Placement (Count II)

Plaintiff next challenges the Hearing Officer's determination that Plaintiff failed to prove that MacFarland was an inappropriate placement for S.S. During the due process hearing, the Hearing Officer considered whether Defendant denied S.S. a FAPE during the 2011-2012 and 2012-2013 school years "by failing to provide him a sufficiently restrictive placement, i.e. place him in a separate, special education day school for students with severe autism." *Id.* at 452; 895.

The Hearing Officer explained that "[t]o prevail, [Plaintiff] was required to prove that the Middle School was not an appropriate placement. She had to prove that . . . in order to access the curriculum, the Student had to be educated in a more restrictive environment." *Id.* at 38. The Hearing Officer concluded that Plaintiff had failed to meet her burden because her case "focused solely on proving that the Nonpublic School can meet the Student's needs, particularly for ABA therapy, the low lighting, and the sensory diet." *Id.* Since "ABA therapy is an instructional methodology, which is generally addressed in a student's IEP," and Plaintiff failed to challenge S.S.'s IEP, the Hearing Officer concluded that "[Plaintiff] failed to prove that Respondent denied the Student a FAPE." *Id.*

Plaintiff now argues that the Hearing Officer erroneously concluded that Plaintiff failed to prove that MacFarland was an inappropriate placement for S.S. Plaintiff contends that the Hearing Officer should have found that MacFarland was an inappropriate placement because it could not materially implement S.S.'s IEP. Specifically, Plaintiff maintains that MacFarland could not implement S.S.'s IEP because (1) pervasive disability harassment at the school caused S.S. to miss school, and (2) MacFarland lacked the resources, particularly certified ABA therapists, to provide the ABA therapy that S.S. required in order to "implement the IEP as it was currently written," Pl.'s Mot. at 17. As to the latter argument, Plaintiff argues that the Hearing Officer erred in finding that the only way to address a failure by the Middle School to provide ABA therapy to S.S. was to challenge the contents of the Student's IEP. *Id*. at 18.

In response, Defendant argues that the Court should not even consider Plaintiff's claim that "DCPS denied S.S. a FAPE by failing to implement his IEP" because Plaintiff failed to first raise this issue during the administrative proceedings. Def.'s Cross-Mot. at 23. Defendant further argues that, in any event, "the record is clear that DCPS was unable to implement S.S.'s

IEP at MacFarland because S.S. failed to attend school," despite the actions DCPS took to assist Plaintiff in ensuring S.S. attended school. *Id*. at 25. As to Plaintiff's argument that MacFarland did not have the resources to implement S.S.'s IEP, Defendant contends that this argument is without merit because S.S.'s June 13, 2012, IEP did not require that S.S. receive ABA therapy, and Plaintiff did not challenge this IEP in her administrative complaint. *Id*.

The Court declines Defendant's request to dismiss Plaintiff's claim at the outset and chooses instead to liberally read Plaintiff's "failure to implement" claim as effectively alleging that MacFarland was not an appropriate placement for S.S. As Plaintiff alleged that MacFarland was an inappropriate placement for S.S. in her administrative due process complaint and presented evidence on this issue at the due process hearing, the Court finds that this claim is properly before the Court—even if the title of Count II suggests otherwise.

Nevertheless, the Court is not persuaded that the Hearing Officer was wrong to the extent that she found that Plaintiff failed to prove that MacFarland was an inappropriate placement because MacFarland could not provide ABA therapy. A student's IEP determines whether an educational placement is appropriate; the placement does not dictate the IEP. *See Roark v. District of Columbia*, 460 F.Supp.2d 32, 44 (D.D.C. 2006); *Spielberg v. Henrico Cty. Public Sch*., 853 F.2d 256, 258 (4th Cir. 1988) ("Educational placement is based on the IEP, which is revised annually."); 34 C.F.R. § 300.116(b)(2). Here, it is undisputed that S.S.'s IEP did not call for ABA therapy as an instructional methodology. *See* AR at 178-95; 275-89; 309-26. Nor does Plaintiff dispute the Hearing Officer's finding that "ABA therapy is an instructional methodology, which is generally addressed in a student's IEP." *Id.* at 38 (citing 34 C.F.R. § 300(a)(1)). As Plaintiff did not challenge S.S.'s IEP and its omission of ABA therapy services in her administrative due process complaint she cannot now argue that MacFarland is an

inappropriate placement because it does not have the ABA therapy resources to materially implement S.S.'s IEP.[7]  Accordingly, the Court grants summary judgment in Defendant's favor on Count II to the extent that Plaintiff argues that MacFarland is an inappropriate placement because it does not have the ABA therapy resources to materially implement S.S.'s IEP.

The Court also grants summary judgment in Defendant's favor on Count II to the extent that Plaintiff argues that MacFarland Middle School was an inappropriate placement because the school could not implement S.S.'s IEP due to pervasive disability harassment.  The Court has already found in Part B(a)(ii) that there is not sufficient evidence in the Administrative Record to show that S.S. failed to make progress at MacFarland due to school avoidance triggered by bullying.  Accordingly, the Court also finds that the Administrative Record does not show that MacFarland was unable to implement S.S.'s IEP due to disability harassment and bullying.

### c.  Ongoing Failure to Provide Home Instruction (Count IV)

Plaintiff's Amended Complaint before this Court also includes a count alleging that Defendant violated the IDEA because "DCPS' ongoing failure to provide home instruction has continued before and since the issuance of the [Hearing Officer Determination], but for three (3) hours of instruction (with no related services) provided in June 2013."  Am. Compl. ¶ 68.   To the extent that this count alleges a violation of the IDEA due to a failure to provide home instruction prior to the issuance of the Hearing Officer Determination, the Hearing Officer clearly ruled in Plaintiff's favor on this issue.  *See* AR at 34-35 (holding that "petitioner proved

---

[7] It is clear from the record that the Hearing Officer found that ABA therapy was not provided at MacFarland.  Nevertheless, Plaintiff has raised concerns that there could be an interpretation, based on certain testimony, that MacFarland was capable of providing ABA therapy.  *See* Pl.'s Mot. at 18-20.  However, the record makes clear that MacFarland was not providing ABA therapy and the Hearing Officer unequivocally determined that ABA therapy, as it is defined, was not provided by MacFarland.

that respondent denied the student a FAPE from October 25, 2012, through *the present* by failing

to provide home-based instruction.").  During the administrative due process hearing, Plaintiff

voluntarily withdrew with prejudice her claim to compensatory education as relief for DCPS'

failure to provide home instruction.  AR at 1450-51.  As a result, there was no relief for the

Hearing Officer to order other than judgment in Plaintiff's favor on liability.  Accordingly, it is

not clear to the Court why Plaintiff is bringing a claim for failure to provide home instruction

before the issuance of the Hearing Officer Determination as this issue was already adjudicated in

Plaintiff's favor during the administrative due process hearing.

To the extent that this count alleges a violation of the IDEA due to a failure to provide

home instruction *since* the issuance of the Determination, this count presents a new claim which

Plaintiff has failed to exhaust through the IDEA administrative complaint process. The issue

certified by the Hearing Officer was whether Defendant denied the student a FAPE "from

October 25, 2012, through the present" by failing to provide him home-based instruction.  AR at

451, 895.  Any claim that DCPS has failed to provide S.S. home instruction in the period *since*

the Determination was issued presents an entirely new issue which must first be raised in an

IDEA administrative complaint.  *See M.T.V. v. DeKalb Cty. Sch. Dist.*, 446 F.3d 1153, 1159

(11th Cir. 2006) (explaining that "[s]ection 1415(i)(2)(A) of the IDEA, which allows parties to

file an action challenging an ALJ's final decision, provides 'any party aggrieved by the findings

and decision under this subsection shall have the right to bring a civil action *with respect to the*

*complaint presented* pursuant to this section' . . . [thus] to pursue claims [not raised in the due

process hearing being challenged in district court], the plain language of the IDEA required

Appellants to file a separate administrative complaint to raise that issue and exhaust all

administrative remedies regarding that complaint before filing a judicial action." (emphasis in

original)).  The Court notes that the need to exhaust this claim is particularly clear in light of the fact that Plaintiff does not cite to any evidence supporting her allegation that DCPS has continued to fail to provide home instruction.  *See Christopher W. v. Portsmouth Sch. Comm.*, 877 F.2d 1089, 1094 (1st Cir. 1989) (explaining that the purpose of exhaustion is to "enable[ ] the agency to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy.").  Accordingly, the Court enters summary judgment in Defendant's favor as to Count IV of Plaintiff's Amended Complaint.

### d.  Section 504 Claims

Finally, Plaintiff brings before this Court several claims under Section 504 of the Rehabilitation Act of 1973.  Specifically, Plaintiff alleges that DCPS retaliated against her for her protected activity advocating for educational services for her son by reporting her to CFSA for neglect and referring her to the Superior Court to face criminal truancy charges.  Plaintiff also argues that DCPS violated Section 504 by allegedly subjecting S.S. to disability harassment and a hostile environment and by denying S.S. a FAPE.   For the reasons stated below, the Court grants summary judgment in Defendant's favor on all of Plaintiff's Section 504 claims.

### i.  Retaliation (Count VII)

Defendant moves the Court to enter summary judgment in Defendant's favor on Plaintiff's Section 504 retaliation claim because Plaintiff failed to exhaust her administrative remedies as to this claim.  Judicial review is generally unavailable under the IDEA unless all administrative procedures have been exhausted.   *Honig v. Doe,* 484 U.S. 305, 327 (1988) (discussing the Education of Handicapped Act, the immediate predecessor to the IDEA); *cf. Cox v. Jenkins,* 878 F.2d 414, 419-21 (D.C. Cir. 1989) (dismissing action under the

Education of Handicapped Act for failure to pursue all administrative avenues of redress). Accordingly, "[a] court has no subject matter jurisdiction over an IDEA claim that has not first been pursued through administrative channels." *Massey v. District of Columbia,* 400 F.Supp.2d 66, 70 (D.D.C. 2005). Although exhaustion of administrative remedies under the IDEA is not required "where exhaustion would be futile or inadequate," Plaintiff bears the burden of demonstrating the futility or inadequacy of the administrative process. *Honig,* 484 U.S. at 326–27; *see also Cox,* 878 F.2d at 419 (dismissing complaint where parents had not made any showing on the record that they were not required to exhaust their administrative remedies because exhaustion would have been futile). "The controlling point of law here is that, absent a showing that exhaustion would be futile or inadequate, a party must pursue all administrative avenues of redress under the [IDEA] before seeking judicial review under the Act." *Cox,* 878 F.2d at 419.

Significantly, the IDEA's exhaustion requirement applies not only to claims brought directly under the IDEA itself, but to any claims for relief available under the IDEA, regardless of the statutory basis for such claims. The IDEA explicitly provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution . . . , title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures [for an impartial due process hearing and administrative appeal] shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(*l* ). That is, although the IDEA does not "restrict or limit the rights, procedures, and remedies available" under other applicable federal laws, a plaintiff must nonetheless exhaust the administrative procedures set forth under the IDEA when "seeking relief

that is also available under" the IDEA, regardless of the statutory basis for such claims. *Id.*; *see also Polera v. Bd. of Ed. of Newburgh Enlarged City School Dist.,* 288 F.3d 478, 487–88 (2d Cir. 2002).

Plaintiff does not dispute that she was required to exhaust her retaliation claim per the IDEA. Instead, Plaintiff argues that she "exhausted the retaliation issue to the extent possible" by filing on March 20, 2013, a Section 504 claim discussing the retaliation, but "[d]efendants made exhaustion of the retaliation claims futile by failing to schedule a hearing." Pl.'s Opp'n. at 15. Plaintiff points to an email exchange "between the parties to try to obtain [a] Section 504 hearing per DCPS' [Section 504] Procedural Manual," *id.* at 15 n.100, in which a representative of the Student Hearing Office explained that "Section 504 claims are outside the scope of work of our IDEA hearing officers," Pl.'s Opp'n. Ex. 11 (Email Exchange), ECF No. [49-11]. Plaintiff contends that "it was futile for [her] to include a separate 504 count in her Complaint because [per the email exchange] the Student Hearing Office has no jurisdiction over 504 claims and the Hearing Officer would have dismissed them." Pl.'s Opp'n. at 15 n. 97.

The Court finds that Plaintiff neither made an effort to exhaust her Section 504 retaliation claim per the IDEA nor demonstrated that exhaustion would have been futile. First, Plaintiff did not exhaust her retaliation claim as required by the IDEA because she did not allege any facts concerning retaliation by DCPS in her *IDEA* administrative complaint presently at issue[8] or in

---

[8] In her Opposition, Plaintiff claims to have described the retaliation "issue in four paragraphs in the Complaint." Pl.'s Opp'n. at 14 n. 95. However, in support of this proposition, Plaintiff only cites to the entire administrative complaint and does not identify the four paragraphs which contain allegations about the retaliation. The Court, in its thorough review of the administrative complaint, fails to find any such allegations. Plaintiff does attach the referral DCPS made to the Superior Court on February 11, 2013; however, the mere presence of a referral document is insufficient to satisfy the requirement that allegations be made concerning Plaintiff's claim of retaliation by DCPS.

any other *IDEA* administrative complaint. The IDEA's statutory language and case law are clear that Plaintiff's retaliation allegations must be exhausted through the *IDEA's* procedures and remedies and not just through any administrative procedures or remedies. *See Weber v. Cranston School Committee*, 212 F.3d 41, 53 (1st Cir. 2000) (holding that "state and federal complaint procedures other than the IDEA due process hearing do not suffice" to comply with IDEA's requirement of exhaustion of administrative remedies; "[e]ven the [complaint resolution procedures (CRP)] . . . which implement IDEA, 'are not an adequate alternative to exhausting administrative remedies under IDEA.' " (citation omitted)); *Rose v. Yeaw*, 214 F.3d 206, 209 n.1 (1st Cir. 2000) (explaining that the IDEA "mandates specific procedures for the due process hearing"); *Padilla v. Sch. Dist. No. 1 in the City and Cty. of Denver, CO*, 233 F.3d 1268, 1274 (10th Cir. 2000) ("the dispositive question generally is whether the plaintiff has alleged injuries that could be redressed to any degree by the *IDEA's administrative procedures and remedies*" (emphasis added)). Here, Plaintiff filed a Section 504 complaint and sought to exhaust that non-IDEA administrative complaint. In order to properly exhaust her retaliation claim pursuant to the IDEA, Plaintiff should have filed an *IDEA* complaint in which she alleged the facts related to her retaliation claim.

Plaintiff's argument that "it was futile for [her] to include a separate 504 count in her Complaint because the Student Hearing Office has no jurisdiction over 504 claims and the Hearing Officer would have dismissed them" misunderstands the scope and purpose of IDEA exhaustion. Even if, as DCPS asserts in the cited email exchange, an IDEA hearing officer does not have jurisdiction over an actual Section 504 *complaint*, the *allegations* related to a Section 504 claim still need to be raised before the IDEA hearing officer to the extent that they "relate

unmistakably to the evaluation and educational placement of [the student],"[9] *DeKalb*, 446 F.3d at 1159, and "could be redressed to any degree by the IDEA's administrative procedures and remedies," *Padilla*, 233 F.3d at 1274. For example, courts have repeatedly held that even though an IDEA hearing officer is not able to offer monetary relief under the IDEA, a plaintiff raising a claim for monetary damages for an educational injury must exhaust that claim before an IDEA hearing officer if the claim could be redressed to any degree by the IDEA's non-monetary remedies. *See Douglass v. District of Columbia*, 605 F.Supp.2d 156, 166-67 (D.D.C. 2009) (citing cases).

Likewise, although retaliation claims are not cognizable under the IDEA, courts have regularly required plaintiffs to exhaust their retaliation claims through the IDEA administrative process to the extent that they are related to the student's evaluation and education. In *DeKalb*, an Eleventh Circuit decision on which Plaintiff relies, the court of appeals held that plaintiff's parents needed to exhaust through the IDEA administrative process their Section 504 allegations that the school district "harassed them at IEP meetings, wrote them intimidating letters in response to their educational demands, and subjected [their child] to needless and intrusive testing" in retaliation for the parents "advocat[ing] for their son's legal rights to receive an appropriate education and be free from discrimination based solely upon his disabilities." 446 F.3d at 1158. The court of appeals found that the retaliation claims clearly related to the student's evaluation and education and thus were subject to exhaustion. *Id.* at 1158-59; *see also Rose*, 214 F.3d at 210 (holding that all the plaintiff's claims, including that the school "retaliated

---

[9] The IDEA complaint provision in subchapter II broadly affords the "opportunity for any party to present a complaint . . . with respect to *any* matter *relating* to the identification, evaluation, or educational placement of the child, or provision of a [FAPE] to such child." 20 U.S.C. § 1415(b)(6) (emphasis added).

against [the student] in response to the [parents'] efforts to enforce his educational rights," were subject to the IDEA's exhaustion requirement because they "relate unmistakably to the evaluation and educational placement of [the student]."); *Weber*, 212 F.3d at 51-52 (holding that plaintiff "had to invoke the due process hearing procedures of IDEA before filing her retaliation claim in federal court pursuant to Section 504"). Similarly, here, DCPS indicated that an IDEA hearing officer would not hear a Section 504 complaint, however, DCPS' policy did not prevent—and indeed case law requires—Plaintiff to raise the *allegations* related to her Section 504 retaliation claim in an IDEA complaint submitted to an IDEA hearing officer because they clearly relate to S.S.'s educational placement and could potentially be redressed by IDEA remedies. As Plaintiff did not raise her Section 504 retaliation allegations in any IDEA complaint and failed to show that exhaustion was futile, the Court enters summary judgment in Defendant's favor as to Count VII of Plaintiff's Amended Complaint.

### ii. Disability Harassment and Hostile Environment (Count V)

Plaintiff next alleges that Defendant violated Section 504 of the Rehabilitation Act by creating a hostile environment due to bullying and disability harassment. Am. Compl. ¶ 70. Section 504 provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794; *see also Robinson v. District of Columbia,* 535 F.Supp.2d 38, 41 (D.D.C. 2008) ("Section 504 prohibits programs and entities that receive federal funding from denying benefits to, or otherwise discriminating against, a person 'solely by reason' of that individual's handicap."). To state a Section 504 claim based on alleged IDEA violations, the D.C. Circuit has consistently noted that, "something more than a

mere failure to provide the [FAPE] . . . must be shown." *Lunceford v. District of Columbia Bd. of Ed.*, 745 F.2d 1577, 1580 (D.C. Cir. 1984) (quoting *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir. 1982)); *Hinson v. Merritt Educational Center*, 521 F. Supp.2d 22, 28 (D.D.C. 2007); *Alston v. District of Columbia*, 770 F.Supp.2d 289, 298 (D.D.C. 2011). A plaintiff must allege that "(1) the disabled student was treated differently from non-disabled students solely because of his or her disabilities, and (2) school officials acted in bad faith or demonstrated gross misconduct." *Jackson v. District of Columbia*, 826 F.Supp.2d 109, 125 (D.D.C. 2011), *aff'd* No. 11-7156, 2013 WL 500809 (Jan. 18, 2013) (citing *Walker v. District of Columbia*, 157 F. Supp. 2d 11, 36 (D.D.C. 2001)); *see also R.S. v. District of Columbia*, 292 F. Supp.2d 23, 28 (D.D.C. 2003). "Liability will not be imposed so long as the 'state officials involved have exercised professional judgment, in such a way as not to depart grossly from accepted standards among educational professionals.' " *Walker*, 157 F. Supp.2d at 35-36 (quoting *Monahan*, 687 F.2d at 1171).

Plaintiff's Section 504 disability harassment claim largely mirrors her IDEA disability harassment/bullying claim, except that Plaintiff also includes within the claim allegations of harassment that cover S.S.'s time at Garrison Elementary School. As the events occurring during S.S.'s time at Garrison were not at issue before the Hearing Officer, they have not been exhausted and thus are not properly before this Court. Consequently, the Court will not consider these allegations in evaluating Plaintiff's claim. Otherwise, Plaintiff's Section 504 disability harassment claim again points to the incidents in which S.S. sustained physical injuries while at MacFarland Middle School, including Plaintiff's allegation that the Classroom Aide used improper physical restraint with S.S, the head injury S.S. received from being hit in the head with a ball during physical education class, and the incident in which S.S. was pushed down by a

34

student running away from a teacher in the cafeteria. *See* Am. Compl. ¶¶ 71, 74, 77, 82. As established in Part B(a)(ii), the Court finds that the Hearing Officer properly discredited Plaintiff's testimony about S.S.'s injuries allegedly inflicted by the Classroom Aide. Since there was otherwise no evidence in the Administrative Record that the Classroom Aide inflicted injury on S.S., this allegation does not support Plaintiff's Section 504 claim.

As for the incidents in the physical education class and the cafeteria, the Court has already found that there was not sufficient evidence in the Administrative Record to show that these incidents caused S.S. to be denied the benefits of a FAPE. *See* Part Part B(a)(ii). Accordingly, the Court finds that S.S. was not denied benefits or otherwise discriminated against solely because of his disability and enters summary judgment on Count V in Defendant's favor.

### iii.  Failure to Provide a FAPE (Count VI)

Finally, Plaintiff alleges that Defendant violated Section 504 by failing to provide S.S. a FAPE. Plaintiff specifically identifies several accommodations that she alleges Defendant failed to provide thus denying S.S. a FAPE. As with Plaintiff's Section 504 disability harassment claim, Plaintiff again presents allegations that were not raised in the administrative due process hearing and thus were not properly exhausted. Specifically, Plaintiff makes two allegations about services not provided and actions not taken at Garrison Elementary School, as well as an allegation that DCPS failed to conduct updated evaluations of S.S. after the head injuries he received and an allegation that DCPS failed to provide reasonable accommodations for S.S.'s vision and motor impairments. As these allegations were not exhausted before the Hearing Officer, they are not properly before this Court and thus will not be considered.

Plaintiff also alleges that DCPS is liable under Section 504 for denying S.S. a FAPE by failing to place him in a safe school environment. This allegation traces Plaintiff's inappropriate

educational placement IDEA claim (Count II), for which the Court has already denied Plaintiff summary judgment because the Administrative Record does not establish that S.S. failed to make progress at MacFarland due to school avoidance triggered by bullying or disability harassment. Accordingly, the Court finds that this allegation also does not support a finding of a denial of a FAPE in violation of Section 504.

The only two allegations that Plaintiff has presented under this count that have properly been exhausted and that actually allege a denial of a FAPE are the allegations that DCPS denied S.S. a FAPE by failing to provide home instruction and by failing to provide an optometry evaluation. Indeed, these are the two bases on which the Hearing Officer found DCPS to have denied S.S. a FAPE in her March 30, 2013, Determination. However, to state a Section 504 claim based on alleged IDEA violations, "something more than a mere failure to provide the [FAPE] must be shown." *Lunceford*, 745 F.2d at 1580 (quoting *Monahan*, 687 F.2d at 1170). Plaintiff needs to show that the school officials acted in bad faith or demonstrated gross misjudgment in denying S.S. these services. *Alston*, 770 F.Supp.2d at 298.

The Court finds that there is nothing in the Administrative Record or the Hearing Officer Determination showing that DCPS acted in bad faith or exercised gross misjudgment in failing to provide S.S. home instruction or conduct the optometry evaluation. As evidence of DCPS' bad faith and gross misjudgment, Plaintiff first points to evidence that DCPS' only witness at the due process hearing lied about her credentials during the hearing[10] and to evidence the DCPS

---

[10] The Court notes that this is the only proposed evidence of bad faith or gross misjudgment for which Plaintiff provides any argument or legal support in her briefs. For all of the other proffered evidence, Plaintiff simply directs the Court to her declaration attached to her Opposition to Defendant's Cross-Motion for Summary Judgment, which contains a statement of alleged facts and several allegations of bad faith and gross misjudgment, but does not include any citations to the Administrative Record. *See* Pl.'s Opp'n., Ex. 8 (Street Decl.), ECF No. [49-

retaliated against her. However, the Court denied Plaintiff leave to supplement the Administrative Record with either of these pieces of irrelevant evidence. Accordingly, the Court will not consider either of these allegations as evidence of DCPS' bad faith or gross misjudgment.

Plaintiff raises the following additional examples of alleged bad faith and/or gross misjudgment, but they have no relation to the only two relevant denials of services—the optometry evaluation and home instruction—and no aggravating factors are otherwise associated with these two denials of services. Moreover, these individual claims do not support a conclusion that they represent bad faith and/or gross misjudgment. First, Plaintiff's claim that DCPS did not hire or train appropriate autism staff was not raised before the Hearing Officer and there is no evidence in the record to support the claim. Street Decl. ¶ 34. That Plaintiff's attorney was not copied in an email regarding home instruction does not rise to the level of bad faith and/or gross misjudgment. *Id.* at ¶ 27. Plaintiff also alleges that MacFarland did not appropriately respond to S.S.'s injuries but points to no evidence that the school ignored the injuries if S.S. was injured at school. *Id.* at ¶¶ 10-13, 21-23. Plaintiff further alleges that she was not notified promptly of his injuries by the school. *Id.* at ¶¶ 13, 21-23. Although there is some dispute as to when Plaintiff was notified, *compare* Pl.'s Stmt. of Facts ¶ 112, ECF No. [46-2] *with* Def.'s Cross-Mot. at 8, Plaintiff points to no policy or procedure regarding parental notification that was violated. In addition, Plaintiff alleges that the teachers at MacFarland Middle School ignored her repeated requests to keep S.S. out of the physical education class, *see*

8]. The Court has nevertheless taken the time to determine whether the allegations of bad faith and gross misjudgment Plaintiff makes in her declaration are supported by the Administrative Record and/or relevant to Defendant's failure to provide home instruction and the optometry evaluation.

Street Decl. ¶ 17, but cites to no evidence supporting this allegation and, in fact, testified at two points during the due process hearing that the teachers at MacFarland honored her request to not have S.S. in the physical education class. *See* AR at 976-77, 1129-30. Finally, Plaintiff alleges in her Reply in support of her Motion for Summary Judgment that "Defendant's choices were motivated by avoiding the expenses inherent in properly programming for a student with complex disabilities," but provides no further explanation nor cites to any evidence in the Administrative Record to support this bald assertion. Pl.'s Reply at 19.

In sum, there is no evidence to support that DCPS acted in bad faith and/or exercised gross misjudgment. [11] Accordingly, the Court finds that Plaintiff has failed to demonstrate the absence of a genuine dispute of material fact with respect to whether Defendant acted with bad faith or gross misjudgment in denying S.S. home instruction and the optometry evaluation. The Court enters summary judgment in favor of Defendant on Count VI of Plaintiff's Amended Complaint.

### e. Failure to Render a Fair and Proper Decision (Count VIII)

Plaintiff's final count—Failure of Hearing Officer to Render a Fair and Proper Decision—effectively restates several of the arguments with which the Court has already dealt and rejected throughout the opinion. The Court finds that the Hearing Officer thoroughly set out in her Determination all of the evidence, that Plaintiff has not pointed to any evidence that the

---

[11] The Court also notes that Plaintiff's withdrawal of her request for compensatory education as relief for DCPS' failure to provide S.S. home instruction undermines Plaintiff's argument that DCPS failed to provide S.S. home instruction in bad faith. In withdrawing her request for compensatory education—the only relief available for a denial of home instruction—Plaintiff effectively withdrew her home instruction claim. The Court finds that Plaintiff's willingness to withdraw this claim undercuts her present argument that Defendant's failure to provide home instruction constituted an egregious violation of Section 504.

Hearing Officer did not consider, and that the Hearing Officer's findings and credibility determinations are reasonable and based on the record. The Court agrees with the Hearing Officer's findings and conclusions of law. That Plaintiff does not agree with the Hearing Officer's Determination does not make it unfair or improper. Accordingly, the Court enters judgment in Defendant's favor on Count VIII.

## IV. CONCLUSION

For the reasons stated, the Court DENIES Plaintiff's [34] Motion for Leave to Submit Additional Evidence. In addition, the Court DENIES Plaintiff's [46] Motion for Summary Judgment and GRANTS Defendant's [47] Cross-Motion for Summary Judgment. Accordingly, the Court enters judgments in favor of Defendant on all eight counts in Plaintiff's Amended Complaint and DISMISSES Plaintiff's Amended Complaint.

An appropriate Order accompanies this Memorandum Opinion.


_____*/s/*_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE